**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| OMAR BILLY, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:13-cv-739 GBL/TRJ |
| ) | |
| v. ) | |
| ) | |
| XTREME FITNESS, INC. d/b/a ) | |
| XSPORT FITNESS, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S ANSWER AND DEFENSES TO PLAINTIFF'S COMPLAINT**

COMES NOW Defendant Xtreme Fitness, Inc., d/b/a XSport Fitness ("Defendant"),[1] by counsel, and denies all factual allegations not specifically admitted below and, answering further, responds to the numbered Complaint and states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Omar Billy is a personal training professional, formerly employed with the defendant in the capacities of Fitness Consultant, Assistant Fitness Consultant, Fitness Manager, and Personal Trainer. He is a resident of Fulton County, Georgia.

**ANSWER:** Defendant admits that Plaintiff Omar Billy is a personal training professional, formerly employed with the Defendant in the capacities of Fitness Consultant, Assistant Fitness Manager, Fitness Manager, and Personal Trainer. Defendant lacks knowledge or sufficient information to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 1 of the Complaint, and, therefore, these allegations are denied.

---

[1] In his Complaint, Plaintiff has inaccurately named "Xtreme Fitness, Inc., d/b/a XSport Fitness" as the Defendant in this action; however, Defendant's proper name is CF Management-VA, L.L.C.

1

2. Defendant XSport is a health and fitness club with locations all over the United States, including a location in Arlington, VA, where Mr. Billy worked.

**ANSWER:** Admitted that Defendant is a health and fitness club with locations in Illinois, New York, and Virginia. Except as specifically admitted, denied.

3. This Court has jurisdiction over the subject matter and the parties to this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims under 42 U.S.C. § 2000 and 29 U.S.C. § 201 *et seq.* arise under federal law.

**ANSWER:** The allegations contained in Paragraph 3 of the Complaint constitute legal conclusions to which no response is required. To the extent that any further response may be deemed to be required, Defendant denies the allegations set forth in Paragraph 3 of the Complaint.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the unlawful acts giving rise to Plaintiff's claims were committed at Defendant's business which is located within this judicial division.

**ANSWER:** The allegations contained in Paragraph 4 of the Complaint constitute legal conclusions to which no response is required. To the extent that any further response may be deemed to be required, Defendant denies the allegations set forth in Paragraph 4 of the Complaint.

5. Mr. Billy has filed claims with the appropriate agencies in order to exhaust all required administrative remedies and has received a Right to Sue Letter from the EEOC.

**ANSWER:** Defendant admits that Plaintiff filed a charge with the EEOC and received a Right to Sue Letter, dated May 30, 2013, from the EEOC. The remaining allegations contained in Paragraph 5 of the Complaint constitute legal conclusions to which no response is required. To the extent that any further response may be deemed to be required, Defendant denies the remaining allegations set forth in Paragraph 5 of the Complaint.

## FACTS

6.   XSport hired Mr. Billy on September 16, 2010.

**ANSWER:**   Admitted.

7.   Xsport assigned Mr. Billy the employment responsibilities of selling physical training service packages and providing physical fitness training.

**ANSWER:**   Admitted that Plaintiff was initially hired to work as a full-time, hourly membership counselor, with the primary duties of driving membership, personal training, and product sales within the club and providing a high level of customer service to Defendant's current and potential customers.  Except as specifically admitted, denied.

8.   From September 16, 2010 through November 1, 2010, Mr. Billy's job duties were not exempt from the wage and hour provisions of the FLSA.

**ANSWER:**   The allegations contained in Paragraph 8 of the Complaint constitute legal conclusions to which no response is required.  To the extent that any further response may be deemed to be required, Defendant denies the allegations set forth in Paragraph 8 of the Complaint.

9.   However, during that time, XSport instructed Mr. Billy to indicate on his time logs that he took a lunch break, even if he had been compelled to work during that period.

**ANSWER:**   Denied.

10.   XSport also instructed Mr. Billy to indicate on his time log that he worked only eight hours on a given day, even if he had actually worked more.

**ANSWER:**   Denied.

11.   During this period, Mr. Billy regularly worked approximately 57 hours a week.

**ANSWER:**   Denied.

12. Upon information and belief, XSport knowingly and intentionally compelled Mr. Billy to falsify the documentation of his labor in an attempt to circumvent the pertinent provisions of the FLSA.

**ANSWER:** The allegations contained in Paragraph 12 of the Complaint constitute legal conclusions to which no response is required. To the extent that any further response may be deemed to be required, Defendant denies the allegations set forth in Paragraph 12 of the Complaint.

13. XSport quickly recognized Mr. Billy's excellent work ethic and capabilities, and promoted him to Assistant Fitness Manager on November 1, 2010.

**ANSWER:** Admitted that Defendant promoted Plaintiff to Assistant Fitness Manager ("AFM") on November 1, 2010. Defendant further admits that Plaintiff's work ethic was but one factor considered when deciding whether to promote Plaintiff to AFM on November 1, 2010. Except as specifically admitted, denied.

14. The primary duty of an Assistant Fitness Manager is to engage in sales.

**ANSWER:** Defendant denies that the primary duty of an AFM is to engage in sales; rather, Defendant states that while an AFM's duties includes meeting personal production standards and team and individual sales goals, an AFM's primary duties also include training and development, recruiting, operations, planning, and customer service. Specifically, these five additional primary duties consist of the following: recruiting, interviewing and hiring of the club's personal trainers; training, managing and fostering the development of "90-day fitness" employees through creation of "game plans" and hands-on training and coaching. Furthermore, as an AFM, Plaintiff was charged with assisting with the daily operations of the club, including managing personal trainer payrolls, DTR's, manual ticket requests, and client files, ensuring that all trainers are adhering to the Defendant's practices, fulfilling Fitness Manager ("FM") duties when the

4

FM is not present, monitoring and documenting any equal employment opportunity complaints and/or other actions that may give rise to disciplinary action; and ensuring customer service through a variety of customer service initiatives. In further response, Plaintiff's allegation that the "primary duty of an Assistant Fitness Manager is to engage in sales" constitutes a legal conclusion to which no response is required. Except as specifically admitted, denied.

15. The Assistant Fitness Manager is not required to supervise the other employees or to manage the company.

**ANSWER:** Defendant is unsure what "other employees" Plaintiff is referring to in paragraph 15, and therefore Defendant denies the allegations set forth in Paragraph 15 of the Complaint. In further response, Defendant refers to the Answer to paragraph 14 of the Complaint. Except as specifically admitted, denied.

16. During Mr. Billy's tenure as Assistant Fitness Manager, he regularly worked approximately 75 hours a week.

**ANSWER:** Denied.

17. While Mr. Billy was Assistant Fitness Manager, XSport would reduce Mr. Billy's pay per hour missed on the rare occasion that Mr. Billy worked less than 40 hours in a given week.

**ANSWER:** Admitted that on those occasions where Plaintiff, in his capacity as AFM, would be absent for one or more full days and thereby work less than 40 hours in a given work week, Defendant was authorized to reduce Plaintiff's salary for any full-day absences if and when Plaintiff had exhausted all leave under Defendant's applicable policy. Except as specifically admitted, denied.

18. XSport again promoted Mr. Billy on December 20, 2010 to Fitness Manager.

**ANSWER:** Admitted.

5

19. Although XSport paid Mr. Billy a salary as a Fitness Manager, the job duties of a Fitness Manager do not qualify the position for exemption from the wage and hour provisions of the FLSA.

**ANSWER:** Admitted that Defendant paid Plaintiff a salary as a FM. In further response, the remaining allegations contained in Paragraph 19 of the Complaint constitute legal conclusions to which no response is required. To the extent that any further response may be deemed to be required, Defendant denies the allegations set forth in Paragraph 19 of the Complaint.

20. Specifically, XSport hired Mr. Billy to fulfill the primary duty of making sales to clients.

**ANSWER:** Denied that Defendant promoted Plaintiff to the position of FM to fulfill the primary duties of making sales to clients. In further response, Defendant states that while a FM's duties includes meeting personal production standards and team and individual sales goals, a FM's primary duties also include training and development, recruiting, operations, planning, and customer service. Specifically, these five additional primary duties consist of the following: recruiting, interviewing and hiring of the club's personal trainers; training, managing and fostering the development of "90-day fitness" employees through creation of "game plans" and hands-on training and coaching, including completing monthly performance reviews and business plans for the twenty-five personal trainers Plaintiff managed at Defendant's Alexandria location. Furthermore, as a FM, Plaintiff was charged with assisting with the daily operations of the club, including managing personal trainer payrolls, DTR's, manual ticket requests, and client files, ensuring that all trainers are adhering to the Defendant's practices, monitoring and documenting any equal employment opportunity complaints and/or other

6

actions that may give rise to disciplinary action; and ensuring customer service through a variety of customer service initiatives.  In further response, Plaintiff's allegation that the primary duty of a Fitness Manager is to "mak[e] sales" constitutes a legal conclusion to which no response is required.  Except as specifically admitted, denied.

21.     During this period, XSport required Mr. Billy to spend approximately 60% of his time engaged in sales, 20% engaged in customer services, 15% supervising employees, and 5% conducting and creating business plans.

**ANSWER:**     Denied.  In further response, in his capacity as FM, Plaintiff spent approximately 15-20% of each work week engaged in sales.

22.     While Mr. Billy was a Fitness Manager, XSport would reduce Mr. Billy's pay per hour missed on the rare occasion that Mr. Billy worked less than 40 hours in a given week.

**ANSWER:**     Admitted that on those occasions where Plaintiff, in his capacity as FM, would be absent for one or more full days and thereby work less than 40 hours in a given work week, Defendant was authorized to reduce Plaintiff's salary for any full-day absences if and when Plaintiff had exhausted all leave under Defendant's applicable policy.  Except as specifically admitted, denied.

23.     While Mr. Billy was a Fitness Manager, XSport required Mr. Billy to work approximately 68 hours per week.

**ANSWER:**     Denied.

24.     Additionally, in mid to late August of 2011, Mr. Billy's supervisor Jim Johnston learned that Mr. Billy's co-worker Andrea Davis was pregnant.

**ANSWER:**     Admitted that Plaintiff's supervisor, Jim Johnston, at some point became aware that that Plaintiff's co-worker, Andrea Davis, was pregnant.  Except as specifically admitted, denied.

25. Thirty seconds after learning this employee was pregnant, Mr. Johnston instructed Mr. Billy to terminate the pregnant employee.

**ANSWER:** Denied.

26. Mr. Billy vocally protested against terminating the pregnant employee and told Mr. Johnston that he believed it was against the law.

**ANSWER:** Denied.

27. Despite Mr. Billy's protestation that terminating an employee for being pregnant is against the law, Mr. Johnston required Mr. Billy to terminate the pregnant employee.

**ANSWER:** Denied.

28. In September and October of 2011, XSport retaliated against Mr. Billy for his protesting the firing of the pregnant employee by demoting to the lowest position of Personal Trainer and transferring him to another XSport location.

**ANSWER:** Admitted that Defendant offered Plaintiff a demotion to a highly-compensated hourly personal trainer position following several months of unsatisfactory performance by Plaintiff. Denied that Defendant transferred Plaintiff to another position; rather, Plaintiff requested a transfer to Defendant's Arlington, Virginia location. The remaining allegations contained in Paragraph 28 of the Complaint constitute legal conclusions to which no response is required. To the extent that any further response may be deemed to be required, Defendant denies the allegations set forth in Paragraph 28 of the Complaint.

29. This demotion lowered his pay, increased his commute, and eliminated his free parking.

**ANSWER:** Admitted that the demotion lowered Plaintiff's overall compensation and precluded Plaintiff from receiving free parking. Defendant lacks knowledge or sufficient information to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 29 of the Complaint, and, therefore, these allegations are denied.

30. Additionally, XSport's demotion of Mr. Billy caused his schedule and paycheck to be unpredictable in that Mr. Billy's schedule became erratic, and if a client did not show up for an appointment, Mr. Billy's would not get paid for that time.

**ANSWER:** Defendant is unsure as to Plaintiff's definition of "erratic" and therefore the allegation that "Mr. Billy's schedule became erratic" is denied. Admitted that "if a client did not show up for an appointment, Mr. Billy's would not get paid for that time." Except as specifically admitted, denied.

31. Mr. Billy was an excellent employee and never received a negative performance review.

**ANSWER:** Denied.

## CAUSES OF ACTION
## COUNT ONE
### Violation of the Fair Labor Standards Act
### 29 U.S.C. § 201 *et seq.*

32. Plaintiff incorporates all allegations of this Complaint fully in this Count.

**ANSWER**: Defendant incorporates its answers to paragraphs 1-31 as if fully restated and set forth herein.

33. Mr. Billy is entitled to overtime pay under the Fair Labor Standards Act, 29 U.S.C. § 206-207.

**ANSWER**: Denied.

34. Defendant XSport violated the provisions of the Fair Labor Standards Act by failing and refusing in a willful and intentional manner to pay Mr. Billy all overtime compensation due to him under the FLSA and its implementing regulations.

**ANSWER**: Denied.

35. Defendant XSport violated the provisions of the Fair Labor Standards Act by misclassifying Mr. Billy in an effort to avoid paying him the overtime compensation due to him under the FLSA and its implementing regulations.

**ANSWER**: Denied.

## COUNT TWO
### Retaliation - Violation of Title VII of the Civil Rights of Act of 1964
### 42 U.S.C. § 2000e

36. Plaintiff incorporates all allegations of this Complaint fully in this Count.

**ANSWER**: Defendant incorporates its answers to paragraphs 1-35 as if fully restated and set forth herein.

37. Mr. Billy voiced his opposition to Defendant's unlawful intention to terminate a female employee because she was pregnant.

**ANSWER**: Denied.

38. XSport was aware of Mr. Billy's voiced opposition to the unlawful employment practice of terminating a pregnant employee.

**ANSWER**: Denied.

39. After learning of Mr. Billy's voiced opposition, XSport retaliated against Plaintiff by demoting him to a low position and transferring him to a new and inconvenient location.

**ANSWER**: Denied.

40. Such acts on the part of XSport resulted in the permanent loss of Mr. Billy's job and denial of benefits.

**ANSWER**: Denied.

41. There is a causal connection between Mr. Billy's voiced opposition to XSport's discriminatory and unlawful employment practices and XSport's termination of Mr. Billy.

**ANSWER**: Denied.

42. XSport's retaliation against Mr. Billy directly and proximately caused him to suffer actual damages in the form of a loss of wages and employment benefits, stress, emotional distress, humiliation, embarrassment and loss of enjoyment of life. Accordingly, Mr. Billy is entitled to recover in this action actual damages, prejudgment interest, and post-judgment interest from XSport in an amount sufficient to compensate him for past and future lost wages and employment benefits and emotional distress caused by XSport's unlawful discrimination and retaliation.

**ANSWER**: Denied.

43. Upon information and belief, XSport's retaliation against Mr. Billy was intentional and in reckless disregard for Mr. Billy's right to be free of such treatment. Therefore, Mr. Billy is also entitled to recover punitive damages against XSport in an amount to be determined by the jury, sufficient to deter XSport and others from engaging in such actions in the future.

**ANSWER**: Denied.

44. Mr. Billy is also entitled to an award of reasonable attorney's fees, expert costs, and costs incurred in bringing this action.

**ANSWER**: Denied.

## RELIEF REQUESTED

45. Mr. Billy requests that:

   (a) Defendant XSport be ordered to pay Mr. Billy the overtime due for all hours so worked;

   (b) Liquidated damages be assessed against Defendant XSport;

   (c) Mr. Billy be awarded pre- and post-judgment interest; and

   (d) Plaintiff Billy be awarded attorney fees and costs.

**ANSWER:** With respect to the "RELIEF REQUESTED" clause (and subparts a-d) contained in Plaintiff's Complaint, Defendant denies any allegation contained therein and affirmatively states that any relief demanded therein is neither appropriate nor authorized.

## JURY DEMAND

46. Plaintiff requests trial by jury on all issues so triable.

**ANSWER:** Defendant requests a trial by jury on all legally appropriate issues.

## GENERAL DENIAL

All allegations set forth in Plaintiff's Complaint not heretofore specifically admitted, denied, or explained, are here and now denied.

11

## ADDITIONAL DEFENSES

Subject to a reasonable opportunity for further investigation, inquiry, and discovery, Defendant alleges the following additional affirmative defenses:

1. Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations.

2. Plaintiff's claims are time barred, in whole or in part, to the extent they were not presented to the United States Equal Employment Opportunity Commission ("EEOC") in a timely fashion, and to the extent they did not occur within the timeframes prescribed by law.

3. Plaintiff's claims are barred, in whole or in part, to the extent that they exceed the scope of or are inconsistent with the charges he filed with the EEOC.

4. Plaintiff's claims are barred to the extent that he has failed to satisfy the administrative prerequisites for asserting such claims.

5. Some or all of Plaintiff's claims fails to state a claim upon which relief can be granted.

6. Defendant denies that it violated Title VII of the Civil Rights Act of 1964 ("Title VII"), the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., or any other applicable law, that it damaged Plaintiff, or that he is entitled to any damages. Nevertheless, to the extent Plaintiff may be entitled to damages, those damages must be denied or reduced because of his failure to make a reasonable effort to mitigate his damages.

7. Defendant is not liable for punitive or liquidated damages because Defendant made a good-faith effort to comply with all applicable laws and the conduct

complained of by Plaintiff, if performed or carried out, was performed or carried out in good faith based on reasonable grounds for believing that such conduct was not in violation of any state or federal laws.

8. Defendant is not liable for punitive or liquidated damages because neither Defendant nor any of its employees committed any act with malice or reckless indifference to Plaintiff's rights as protected by federal, state, or local law, or approved, authorized, or notified, or had actual knowledge of, any such acts.

9. Awarding punitive damages to Plaintiff against Defendant under the facts and circumstances of this cause would violate the Due Process Clause or other provisions of the United States Constitution or the Constitution of the Commonwealth of Virginia, or both.

10. All employment decisions regarding or affecting Plaintiff were based on legitimate, non-discriminatory, non-retaliatory, and reasonable business justifications.

11. Plaintiff's damages may be barred in whole or in part by the doctrine of after-acquired evidence.

12. Defendant is an equal opportunity employer that does not discriminate against employees on any prohibited basis.

13. Defendant denies that it violated Title VII, the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., or any other applicable law.  Nevertheless, even if Plaintiff were able to show that a prohibited factor motivated Defendant's employment actions (which Defendant expressly denies), the same action would have been taken even in the absence of such alleged motivation and, therefore, Plaintiff's claims must fail.

14. If any improper, illegal, or discriminatory acts were taken by any person against Plaintiff, it was outside the course and scope of that employee's employment, contrary to Defendant's policies, and was not ratified, confirmed, or approved by Defendant. Thus, any such actions cannot be attributed or imputed to Defendant.

15. Defendant is not liable for any alleged retaliation because Defendant had measures in place to prevent or correct retaliation, and Plaintiff unreasonably failed to use those measures.

16. Any claim for overtime liability and liquidated damages for a period in excess of two years before Plaintiff commenced his action is barred by the statute of limitations contained in Section 6 of the Portal-to-Portal Act, as any violation of the FLSA that may have occurred were not "willful" within the meaning of the FLSA. To the extent this action purports to seek overtime liability and liquidated damages for a period in excess of three years before commencement of this action, such claim is barred by the statute of limitations contained in Section 6 of the Portal-to-Portal Act, even assuming, *arguendo*, that any violations of the FLSA that may have occurred were "willful" within the meaning of the FLSA.

17. Plaintiff is exempt from the overtime provisions of the FLSA pursuant to the executive exemption and/or the administrative exemption.

18. Plaintiff's claims are barred in whole or in part as to all hours during which he was engaged in activities that were not compensable work under the FLSA and were not an integral and indispensable part of his principal activities, including non-compensable activities that were preliminary or postliminary to his principal activities.

19. Some or all of the disputed time for which Plaintiff is seeking recovery of wages purportedly owed is not compensable pursuant to the *de minimis* doctrine.

20. Plaintiff is not entitled to compensation for time he purportedly worked without Defendants' knowledge.

21. Any claim for minimum wage and/or overtime liability and liquidated damages is barred under the Portal-to-Portal Act of 1947, as amended, 29 U.S.C. § 259 as Defendant's acts or omissions were at all times made in good faith in conformity with and in reliance on written administrative regulations, orders, rulings and interpretations of the Administrator of the Wage and Hour Division of the U.S. Department of Labor, or the regulations of the United States Department of Labor.

22. Plaintiff knows or should know that he did not work and/or is not entitled to the amount of overtime Plaintiff alleges in his Complaint and therefore payment of this amount to Plaintiff would be unjust enrichment.

23. If Plaintiff is able to establish that Defendant subjected him to pay deductions that are inconsistent with pay on a salary basis, Plaintiff remains exempt from the overtime wage provisions of the Fair Labor Standards Act because Defendant complied with the "safe harbor" provisions under the relevant regulations of the Fair Labor Standards Act.

24. Defendant reserves the right to assert additional defenses as may arise during the course of this litigation.

WHEREFORE, Defendant Xtreme Fitness, Inc., d/b/a XSport Fitness, respectfully requests that judgment be entered in its favor, that costs and reasonable attorneys' fees be awarded to it and that Plaintiff take nothing by way of his Complaint.

Respectfully submitted,

    /s/ John B. Flood
John B. Flood (Va. Bar No.79813)
OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.
1909 K Street, N.W., Suite 1000
Washington, D.C. 20006
Tel: 202.887.0855
Fax: 202.887.0866
john.flood@ogletreedeakins.com

*Counsel for Defendant*

Dated: October 11, 2013

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| OMAR BILLY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:13-cv-739 GBL/TRJ |
| | ) | |
| v. | ) | |
| | ) | |
| XTREME FITNESS, INC. d/b/a | ) | |
| XSPORT FITNESS, | ) | |
| | ) | |
| Defendant. | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of October, 2013, I electronically filed a copy of the foregoing Defendant Xtreme Fitness, Inc., d/b/a XSport Fitness' Answer and Affirmative Defenses to Plaintiff's Complaint using the CM/ECF system and thereby sent notice to all registered counsel of record, and mailed a copy of the foregoing Motion to the following:

Jacob M. Small, Esq.
The Spiggle Law Firm PLLC
4830-B 31st Street South,
Arlington, VA 22206
*Attorney for Plaintiff*

　　　　　/s/_John B. Flood
John B. Flood (Va. Bar No.79813)
OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.
1909 K Street, N.W., Suite 1000
Washington, D.C.  20006
Tel:  202.887.0855
Fax:  202.887.0866
john.flood@ogletreedeakins.com

*Counsel for Defendant*